UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GWENDOLYN HEARN, ) | |
| ) | Case No. 19-cv-3346 |
| Plaintiff, ) | |
| ) | Judge Sharon Johnson Coleman |
| v. ) | |
| ) | |
| LOUIS DeJOY, POSTMASTER GENERAL ) | |
| UNITED STATES POSTAL SERVICE, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Gwendolyn Hearn brings a hostile work environment claim based on race against her former employer the United States Postal Service ("USPS") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C § 2000e, *et seq*. In response, USPS filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(a).[1] For the reasons explained below, the Court grants USPS's motion.

**Background**

During the relevant time period, Hearn, who is African-American, worked as a full-time general clerk at USPS's South Suburban Vehicle Maintenance Facility ("facility") in Bedford Park, Illinois. On September 23, 2016, Hearn and other facility employees were doing an annual inventory of the stockroom, which Hearn's co-worker Merry Hendricks supervised. At that time, Hendricks supervised the taking of inventory, but was not Hearn's supervisor. At her July 14, 2020 deposition, Hearn testified that Hendricks told her to work with an individual named Michael Smerz, but that Hearn wanted to work with her regular partner. According to Hearn, Hendricks yelled at her, got

---

[1] Because Hearn is proceeding pro se, USPS served her with the Northern District of Illinois Local Rule 56.2 Notice to Pro Se Litigants Opposing Summary Judgment on September 16, 2020.

close to her face, looked her in the eyes, and told her that she was going to work with Smerz. Hearn says she then backed up and put her hands up to shield her face "because people spit when they talk," after which Hendricks bumped against her and touched her in an intimidating way.

Hearn and Hendricks then left the storeroom where a security camera captured their continuing exchange, including Hearn waving her hands. There was no audio accompanying the video footage. Hearn testified that she waved her hands and told Hendricks to leave her alone. She explains that she was angry because Hendricks had bumped into her and touched her. Hearn then returned to the stockroom where she worked on inventory with her regular partner. Later that day, another employee bumped into Hearn. She testified that after that she did not feel well, so she went to a nearby clinic. After she was released from the clinic, she returned back to work, but then left for home shortly thereafter.

When the facility manager, Suzanne Peters, became aware of the September 23 incident between Hearn and Hendricks, she immediately started an investigation because USPS has a zero-tolerance policy for threats of violence or violence in the workplace. Peters then contacted the labor relations department to see if she should put Hearn and Hendricks on emergency placement. Labor relations stated that because neither employee felt threatened, the employees should remain on the clock, but should be interviewed if warranted. Thereafter, Hearn's supervisor, David Begeske, interviewed Hearn, Hendricks, and seven other employees about the September 23 incident. Hearn and Hendricks were both disciplined for the incident—Hearn received a 14-day suspension that she never served, and Hendricks received a letter of warning.

To exhaust her race discrimination claim as a federal employee Hearn filed an EEO complaint in January 2017 alleging a hostile work environment claim based on race that occurred on September 23, 2016. *See* 29 C.F.R. § 1614.105. The EEO accepted the following claim for investigation:

2

> On September 23, 2016, you were subjected to a hostile work environment when a co-worker made physical contact with you, and management did not take the appropriate action when you reported the incident.

The EEO also accepted an additional claim for investigation: "On October 17, 2016, you were issued a Notice of 14-Day Suspension." In her acceptance for investigation, Hearn stated that she did not want the October 17, 2016 Notice of 14-Day Suspension to be an issue of her investigation.

The postal service's EEO office found no discrimination in a final agency decision issued on June 23, 2017. On August 14, 2018, the EEOC affirmed the no discrimination finding in a written decision. In the interim, Hearn retired from the USPS on July 1, 2017, at the age of 63.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986). When determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255; *Hackett v. City of South Bend*, 956 F.3d 504, 507 (7th Cir. 2020). After "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 255 (quotation omitted).

**Discussion**

The only claim Hearn has properly exhausted is her racially hostile work environment claim based on the September 23, 2016 incident with her co-worker Hendricks. To survive a summary judgment motion on a racially hostile work environment claim, Hearn must present some evidence demonstrating a triable issue of fact that: (1) the work environment was both objectively and

3

subjectively offensive; (2) the harassment was based on membership in a protected class; (3) the conduct was severe or pervasive; and (4) a basis for employer liability, namely, that the employer failed to take corrective measures once on notice of the harassment. *Tyburski v. City of Chicago*, 964 F.3d 590, 601 (7th Cir. 2020); *Hunt v. Wal-Mart Stores, Inc.,* 931 F.3d 624, 627 (7th Cir. 2019). Courts consider hostile work environment claims under the totality of the circumstances. *See Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Key to the Court's determination is whether the evidence in the record would permit a reasonable factfinder to conclude that the harassment Hearn has identified was based on her race. *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

Viewing the evidence and all reasonable inferences in Hearn's favor, her hostile work environment claim fails for several reasons. First, there is no evidence in the record that Hendricks or any of Hearn's co-workers made comments or took actions based Hearn's race on September 23. Although Hendricks called Hearn a "bitch" on occasion throughout the many years they worked together, Hearn has not identified any racial slurs or statements reflecting racial animus that Hendricks made in connection to the relevant incident Hearn highlighted in her EEO complaint. Indeed, Hearn admits at her deposition that during the September 23 incident, no one made a comment about her race or color. Instead, Hearn testified that the facility manager Peters made faces at her on occasion and that her direct supervisor Begeske sometimes called her a girl, but, again, these statements are not connected to the September 23 incident or investigation.[2] Therefore, the harassment Hearn identifies is not directly connected to the relevant time period or her race, and thus cannot establish a racially hostile work environment. *See Smith v. IDOT*, 936 F.3d 554, 560 (7th Cir. 2019).

---

[2] The Court is not concluding that comments such as "bitch" or "girl" do not have racial undertones, but instead, that these comments were unrelated to the September 23 incident.

Next, evidence in the record shows that once management found out about the September 23 incident, it immediately initiated an investigation, thus there is no basis for employer liability. *See Hunt*, 931 F.3d at 630 ("a prompt investigation is the hallmark of a reasonable corrective action.") (citation omitted). Specifically, Hearn's supervisor interviewed her, along with seven other employees. Hearn admits at her deposition that her supervisor interviewed her twice about the incident, one time with her union steward. That her supervisor only asked her about the video taken outside the storeroom, as Hearn contends, does not establish that management did not investigate the incident, especially because other evidence in the record shows that her supervisor asked numerous individuals about the incident in the storeroom, not just the interaction outside the storeroom caught by the security camera.

Hearn brings additional claims in her response brief, including that she was constructively discharged because she retired five years before she had planned, and that Hendrick's created a hostile work environment in 2013. Hearn has failed to exhaust these claims because plaintiffs who file employment discrimination lawsuits in federal court may only bring claims that were included in their EEO filings or claims that are related to those allegations. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). Hearn's EEO claim for investigation included the hostile work environment claim based on the September 23, 2016 incident, not her retirement in July 2017 or any alleged harassment in 2013. Moreover, Hearn explained at her deposition why she retired early, namely, she did not want to fight with Hendricks based on Hendrick's bullying her.

In the end, Hendricks and Hearn had a contentious co-worker relationship that may have had racial undertones, but Hearn's deposition testimony reveals that any such racial undertones were not directly related to the September 23 incident. It appears that Hendricks' conduct created an unpleasant and uncomfortable workplace for Hearn, but without evidence that the harassment that

5

took place on September 23 was based on her race, Hearn's Title VII hostile work environment claim lacks merit.

**Conclusion**

Based on the foregoing, the Court grants defendant's summary judgment motion [53]. Civil case terminated.

IT IS SO ORDERED.

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

DATED: 3/22/2021